**FILED**

AUG 3 1 2017

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| ROBERT JAMES WATSON, §<br>TDCJ No. 547826, §<br> **Petitioner,** §<br> §<br>v. §<br> §<br>LORIE DAVIS, Director, §<br>Texas Department of Criminal Justice, §<br>Correctional Institutions Division, §<br> **Respondent.** § | CIVIL NO. SA-16-CA-090-OLG |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Robert James Watson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket Entry "DE" 1), Respondent's Answer (DE 9), and Petitioner's Traverse (DE 16).[1]  Also before the Court are Petitioner's Motion for Expansion of the Record (DE 17), Motion for Leave to Amend Petition (DE 18), and Motion for Evidentiary Hearing (DE 19).  Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. Background

In May 2012, Petitioner was found guilty by a Bexar County jury of delivery of a controlled substance (enhanced) and was sentenced to ten years of imprisonment.  *State v. Watson*, No. 11-1543-CR (274th Dist. Ct., Guadalupe Cnty., Tex. May 15, 2012).  The facts of Watson's offense were accurately summarized by the Fourth Court of Appeals on direct appeal:

---

[1]      Petitioner has paid the applicable filing fee for this cause (DE 2) and is proceeding *pro se.*

In April of 2011, the Guadalupe County Sheriff's Office Narcotics Division entered into an agreement with a confidential informant, Melvin Bruns, to help secure several drug cases for indictment. In exchange for Bruns's help, the District Attorney's Office agreed not to file an evading arrest charge pending against Bruns. One of the individuals identified by Bruns was [Petitioner] Robert Watson.

On April 12, 2011, Lieutenant John Flores fitted Bruns with an audio/video recording device. Under surveillance by the sheriff's office, Bruns drove to Watson's residence, parked the vehicle, and entered Watson's home. During the transaction, Bruns allegedly purchased cocaine from Watson. Bruns then drove to a predetermined location to meet Lieutenant Flores and Investigator Kris Deslatte. Investigator Deslatte obtained the substance in question from Bruns's vehicle. The entire proceedings, from shortly after Bruns was fitted with the recording device until Investigator Deslatte removed the substance from Bruns's vehicle, were recorded. Later analysis proved the substance in question was approximately 1.83 grams of cocaine.

On May 15, 2011, Watson was charged with one second-degree felony count—delivery of a controlled substance, namely cocaine. Because Bruns's whereabouts were unknown at the time of trial, Bruns did not testify. The jury returned a guilty verdict, and after finding the State's enhancement allegation true, assessed punishment at ten years confinement.

*Watson v. State*, 421 S.W.3d 186, 189 (Tex. App.—San Antonio, Dec. 4, 2013, pet.

ref'd).

Watson's conviction and sentence were affirmed on direct appeal, and the Texas Court of

Criminal Appeals refused his petition for discretionary review on May 14, 2014. *Id.*; *Watson v.*

*State*, No. 0294-14 (Tex. Crim. App.). On March 12, 2015, Watson filed a state habeas corpus

application challenging the constitutionality of this state court conviction and sentence, which

the Texas Court of Criminal Appeals later denied without written order on December 23, 2015.

DE 11-21 at 90; DE 11-16; *Ex parte Watson*, No. 25,844-10 (Tex. Crim. App.).

The instant federal petition was filed a month later on January 20, 2016. DE 1 at 10. In

the petition, Watson argues: (1) the judgment is invalid because it incorrectly reflects the court

in which the case was tried; (2) the judgment is invalid because a visiting judge presided over his

trial; (3) his trial was a nullity because it was held at a time not authorized under Texas law; (4)

he was denied the effective assistance of counsel by counsel's cumulative failure to challenge the above errors; (5) the State unlawfully obtained his conviction by securing an indictment without probable cause and by illegally using a confidential informant; (6) the State committed prosecutorial misconduct by soliciting false testimony, suppressing material evidence, and making a misleading opening statement; (7) trial counsel failed to file a motion to suppress all evidence related to the confidential informant; (8) trial counsel failed to raise Confrontation Clause objections to the hearsay testimony of the confidential informant; (9) trial counsel failed to raise an objection to scientific testimony under Rule 702 of the Texas Rules of Evidence; (10) he received ineffective assistance on direct appeal by counsel's failure to adequately challenge the trial court's rulings; and (11) he received ineffective assistance on direct appeal by counsel's failure to challenge the sufficiency of the evidence, the trial court's ruling on the motion to suppress, and the trial court's refusal to rule on his motion for new trial.

## II. Petitioner's Motions

### A.    Motion to Expand Record

Petitioner's first motion (DE 17) asks this Court to expand the record pursuant to Rule 7 of the Rules Governing Habeas Corpus Cases. Under Rule 7, "the judge may direct the parties to expand the record by submitting additional materials relating to the petition." In discussing this rule, the Fifth Circuit has observed that a federal habeas petitioner is "entitled to careful consideration and plenary processing of [his claims], including full opportunity for presentation of the relevant facts." *Stewart v. Estelle*, 634 F.2d 998, 1000 (5th Cir. 1981) (quoting *Harris v. Nelson*, 394 U.S. 286, 298 (1969)).

Watson moves for expansion of the record to include "all exhibits and affidavits attached to his § 2254 petition and memorandum brief." He also requests that the record be expanded to

include all of the motions filed in state court in connection with his state habeas proceedings. No exhibits or affidavits were attached to his § 2254 petition, however, and the state court record already includes the motions Watson filed during his state habeas proceedings. *See* DE 11. Because an expansion of the record is unnecessary to afford Watson a "full opportunity" to present relevant facts, *Stewart*, 634 F.2d at 1000, Watson's motion (DE 17) is denied.

**B.     Motion to Amend**

Watson next requests leave to amend his § 2254 petition with a new claim challenging the sufficiency of the evidence supporting his conviction. DE 18. A petitioner's motion to amend must be considered in the context of the rules that apply in § 2254 cases. *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (holding the Rules Governing Section 2254 Cases govern federal habeas proceedings launched by state prisoners). Rule 12 provides that the "Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Rule 12, Rules Governing Section 2254 Cases. The applicable civil rule is Rule 15(a)(2), which provides that a "court should freely grant leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).[2]

Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). In exercising its discretion, the Court may consider a variety of factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party[], and futility of the amendment." *United States v. Trevino*, 554 F. App'x 289, 293 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)). Leave to

---

[2]     In addition, 28 U.S.C. § 2242 specifically provides that habeas petitions "may be amended . . . as provided in the rules of procedure applicable to civil actions."

amend should be denied when doing so is required for fairness to the party opposing the motion for leave to amend. *Zenith Radio Corp. v. Hazeltime Research, Inc.*, 401 U.S. 321 (1971).

Here, Respondent has not opposed the motion for leave to amend, nor does there appear to be an issue of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies. Watson's motion for leave to amend requests permission to present an issue bearing upon the fundamental fairness of his state court trial. Moreover, Watson's proposed amendment of his petition to include a stand-alone sufficiency-of-the-evidence claim does little more than expand upon the allegation that his appellate counsel was ineffective for failing to raise such a claim on direct appeal. The Court will permit Watson to amend his original petition to include his stand-alone challenge to the sufficiency of the evidence.

## C.   Motion for Evidentiary Hearing

Watson next requests an evidentiary hearing (DE 19) to challenge the state court's resolution of his claims for relief. His request is denied, as habeas petitioners are not entitled to a federal evidentiary hearing to develop new evidence to attack the state court's resolution of their claims. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Under the AEDPA, the proper place for development of the facts supporting a claim is the state court. *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding the AEDPA clearly places the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court). Thus, as in this case, when a petitioner's claims have been rejected on the merits by the state courts either on direct appeal or during petitioner's state habeas corpus proceeding, further factual development in federal court is effectively precluded. *Pinholster*, 563 U.S. at 181-88 (2011)

(holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by §2254(d)(1)); *Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance.").

Likewise, where a federal habeas corpus petitioner's claims lack merit on their face, further factual development is not necessitated. *See Register v. Thaler*, 681 F.3d 623, 627-30 (5th Cir. 2012) (recognizing the discretion inherent in district courts to allow factual development, especially when confronted with claims foreclosed by applicable legal authority). "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro v. Landrigan,* 550 U.S.465, 468 (2007)). "In determining whether to grant a hearing, under Rule 8(a) of the Habeas Court Rules 'the judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted.'" *Richards*, 566 F.3d at 562-63 (*quoting Hall v. Quarterman,* 534 F.3d 365, 368 (5th Cir. 2008)). In making this determination, courts must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Richards*, 566 F.3d at 563 (*quoting Schriro*, 550 U.S. at 474).

The only claim before the Court that was not adjudicated on the merits in state court is Watson's new stand-alone challenge to the sufficiency of the evidence raised for the first time in his motion to amend. As this is a purely record-based claim, however, no evidentiary hearing is

warranted. *See Schriro*, 550 U.S. at 474 (recognizing that "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citation omitted). Moreover, as discussed more thoroughly later in this opinion, Watson's allegation lacks merit on its face. Further factual development is therefore unnecessary. *Register*, 681 F.3d at 627-30.

### III. <u>Standard of Review</u>

Watson's federal petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was

objectively unreasonable, which is a "substantially higher threshold." *Schriro,* 550 U.S. at 473; *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter,* 562 U.S. at 101 (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Watson must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon,* 565 U.S. 23, 24 (2011).

## IV. **Merits Analysis**

### A. **State Law Violations (Claims 1-3).**

Watson's first three grounds for relief assert the judgment under which he is confined is void under Texas law. Specifically, Watson contends his judgment is invalid because (1) it reflects that he was convicted in the 274th District Court despite the fact he was indicted in the 25th District Court and the case was never transferred; (2) his trial was presided over by a visiting judge who had no jurisdiction over his proceedings; and (3) his trial occurred at an unauthorized time. Each claim essentially argues that the state court incorrectly applied Texas law when it rejected the claims during Watson's state habeas proceeding. Because such claims do not raise cognizable federal constitutional issues, Watson fails to demonstrate the state court's rejection of the claims was contrary to, or an unreasonable application of, Supreme Court precedent.

It is well settled that claims challenging a state court's determination of state law are not cognizable in a federal habeas corpus proceeding, and that federal courts must defer to the state-

court determination of Texas law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (stating that the Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law.")(citations omitted); *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998) (failure to follow Texas law is not reviewable). Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1983). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.") (internal citation and quotation marks omitted). Consequently, even if the state courts misapplied state law as Watson now suggests, it would have no impact on this proceeding. Relief is therefore denied.

**B.      Prosecutorial Misconduct Claims (Claims 5, 6).**

Watson next accuses the State of using unlawful methods calculated to produce a wrongful conviction. In his fifth ground for relief, he asserts the prosecution secured his indictment without probable cause and through the "illegal" use of Melvin Bruns as an informant. In his sixth allegation, he contends the prosecution (1) solicited false testimony to secure his conviction; (2) suppressed material evidence regarding Bruns that could have been used to suppress evidence and impeach State witnesses; and (3) knowingly made false and misleading statements in their opening statement. As discussed below, Watson fails to

demonstrate the state court's rejection of the claims was contrary to, or an unreasonable application of, Supreme Court precedent.

### 1.    Challenges to the Indictment

Watson first contends that his indictment was secured without probable cause because no testimony was presented to the grand jury from a witness who actually saw Watson commit the offense for which he was charged. This contention appears to be more related to Watson's new assertion, raised for the first time in his motion to amend, that the evidence was insufficient to support the conviction, and will be addressed separately. Watson also alleges the indictment was unlawfully obtained through the use of an informant, Melvin Bruns, who had an outstanding warrant for his arrest in another county. Because the Sheriff's Department policy prohibited the use of confidential informants with outstanding warrants, Watson argues the use of Bruns as an informant was illegal and thus his indictment was obtained without probable cause. However, Watson offers no legal basis for his contention that a law enforcement agency's failure to follow internal policy concerning confidential informants somehow renders their investigation illegal or invalidates a subsequent indictment.

In any event, the sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. *Evans v. Cain,* 577 F.3d 620, 624 (5th Cir. 2009). State law dictates whether a state indictment is sufficient to confer a court with jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). As such, this Court is "required to accord due deference to the state's interpretation of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction." *Id.* at 69 (citations omitted). The issue is foreclosed from consideration on federal habeas review if "the sufficiency of the [indictment] was squarely presented to the highest court

10

of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citation omitted).

Here, Watson's claims concerning the sufficiency of the indictment were presented to the Texas Court of Criminal Appeals during Watson's state habeas proceedings. DE 11-21 at 15-16 (ground 1 of Petitioner's state habeas application). The Texas Court of Criminal Appeals subsequently denied the application without written order. DE 11-16. Because the sufficiency of the indictment was squarely presented to the highest state court and that court held that the trial court had jurisdiction over this case, this claim is foreclosed to federal habeas review. *Wood*, 503 F.3d at 412.

   2.   Soliciting False Testimony

Next, Watson alleges that the State knowingly solicited false testimony from Investigator Deslatte that State's Exhibit 6 was contraband evidence obtained by the confidential informant at the controlled buy. According to Watson, Investigator Deslatte must have testified falsely about the evidence he recovered being "crack cocaine" because (1) the forensic analyst testified the substance was a powdery substance, and (2) the photograph taken of the substance admitted as State's Exhibit 3 shows a powdery substance. Watson also alleges that Lieutenant Flores testified falsely by exaggerating the reasons he was able to obtain a search warrant. Watson believes he testified falsely in order to authenticate the recording of the controlled buy and have it admitted as evidence. Neither of these allegations warrant federal habeas relief.

In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses perjured testimony or allows false testimony to go uncorrected at trial. *See also Giglio v. United States*, 405 U.S. 150 (1972). A petitioner seeking to obtain relief on such a claim must show that (1) the testimony is false, (2)

the State knew that the testimony was false, and (3) the testimony was material. *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998). Despite pointing out some discrepancies regarding the appearance of the contraband and the content of the search warrant affidavit, Watson has not shown the testimony of either Investigator Deslatte or Lieutenant Flores to be false, much less that the State knowingly presented the false testimony. Moreover, false testimony is only material if there was a reasonable likelihood that it affected the jury's verdict. *Giglio*, 405 U.S. at 153-54; *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). Despite Watson's claims to the contrary, no such likelihood exists in this case. Consequently, federal habeas relief is denied, as Watson has not demonstrated the state court's rejection of his claim was either contrary to, or an unreasonable application of, clearly established federal law.

3.    The Suppression of Evidence

Watson alleges the prosecution failed to disclose the fact that the confidential informant, Melvin Bruns, (1) made a written statement after the transaction in question, and (2) had an outstanding felony warrant on the day he recorded the controlled buy. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) that evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

Initially, Watson fails to establish evidence was suppressed. Watson cites to testimony from Lieutenant John Flores[3] that Bruns "provided a statement" to Investigator Deslatte while Lieutenant Flores was retrieving the video equipment and narcotics Bruns had just purchased from Watson, but it is unclear from the record whether Lieutenant Flores was referring to a written statement (as suggested by Watson) or an oral statement Bruns may have given. *See* DE 10-8 at 88. Either way, Watson admits—and the record confirms—that he was made aware of the statement during his trial and not afterward. The same is true for Bruns's outstanding felony warrant, although it is unclear why Bruns's criminal history could not have been discovered earlier by defense counsel. *See Kutzner v. Cockrell*, 303 F.3d 333 (5th Cir. 2002) (holding *Brady* does not obligate the State to supply the defense with exculpatory evidence that is fully available through the exercise of reasonable diligence).

Regardless, even if this Court were to assume the evidence in question was suppressed, Watson's *Brady* claim must fail because he has not demonstrated the evidence was material. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 684 (1985). Watson contends that Bruns's statement could have been used to impeach the testimonies of Investigator Deslatte and Lieutenant Flores. Besides being completely speculative, however, the record reflects that trial counsel thoroughly cross-examined the officers about their use of Bruns as an informant, including Bruns's prior criminal history, his reliability, and any favorable treatment he may have received as a result of his agreement to work as a confidential informant. Similarly, Watson provides nothing but speculation that knowledge of Bruns's outstanding warrant would have somehow led to the suppression of all the evidence obtained through his employment as an informant. *See Murphy v. Johnson*, 205 F.3d

---

[3] Watson mistakenly states the testimony was from Investigator Kris Deslatte. DE 1 at 15, DE 16 at 37.

809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusionary' or are purely speculative cannot support a *Brady* claim."). Accordingly, Watson has not established a *Brady* violation, and thus fails to demonstrate that the state court's rejection of his claim was either contrary to, or an unreasonable application of, clearly established federal law.

4.    Improper Jury Argument

In his final allegation of prosecutorial misconduct, Watson alleges the prosecution knowingly made false and misleading statements in its opening argument regarding Bruns, the confidential informant. In order to make Bruns appear more credible, Watson argues, the prosecution stated Bruns had completed several cases as a confidential informant and was responsible for multiple arrests, when in fact he had only been involved in one drug buy which resulted in the arrest of two individuals prior to the instant case. Like his other claims of misconduct, Watson unsuccessfully raised this issue during his state habeas proceedings. Again, he fails to demonstrate that the state court's rejection of his claim was either contrary, or an unreasonable application of, clearly established federal law.

Allegations of prosecutorial misconduct are analyzed in two steps. *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013) (citation omitted). The first is to evaluate whether the prosecutor made an improper remark. *United States v. Fields,* 483 F.3d 313, 358 (5th Cir. 2007) (citation omitted). If so, the second step is to determine whether the defendant suffered prejudice. *Id.* This second inquiry sets a high bar: "Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." *United States v. Ebron,* 683 F.3d 105, 140 (5th Cir. 2012) (quoting *United States v. Holmes,* 406 F.3d 337, 355–56 (5th Cir. 2005)). A criminal conviction should not be "lightly overturned on the basis of a prosecutor's comments standing alone," but rather only when "the prosecutor's

remarks cast serious doubt on the correctness of the jury's verdict." *Id.* Thus, in deciding whether serious doubt infects the verdict, the Court considers three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* (quoting *United States v. Mares,* 402 F.3d 511, 515 (5th Cir. 2005)) (internal quotation marks omitted).

There was nothing improper about the prosecution's statements regarding Bruns's reliability as a confidential informant. To start, the prosecution's assertion that Bruns completed "several" successful cases and was responsible for "multiple" arrests, while arguably misleading, appears to technically be true—as Watson admits, Bruns was involved in more than one drug buy and responsible for the arrests of at least three individuals, including himself. Moreover, testimony was given at trial regarding Bruns's successful work as an informant for law enforcement. Generally speaking, the four proper areas for prosecutorial jury argument are summation of the evidence, reasonable inference from the evidence, answers to opposing counsel's argument, and pleas for law enforcement. *See, e.g., Norris v. Davis*, 826 F.3d 821, 832 n.10 (5th Cir. 2016) (recognizing these four areas as permissible subjects for jury argument under Texas law). As the prosecution's remarks about Bruns clearly fell within either of the first two categories, they were not improper.

Even if they were improper, this Court finds nothing prejudicial about the prosecution's remarks during opening argument. The outcome of Petitioner's trial turned largely on the relative credibility of the testimony of Investigator Deslatte and Lieutenant Flores, and not on the credibility of the informant they employed (who did not testify). More importantly, Bruns's reliability as a confidential informant was the subject of trial counsel's thorough cross-examination of both Investigator Deslatte and Lieutenant Flores. Thus, the prosecution's

statement likely had very little prejudicial effect, and certainly did not cast "serious doubt on the correctness of the jury's verdict." *Ebron,* 683 F.3d at 140. Federal habeas relief is therefore unwarranted.

## C.    Trial Counsel Claims (Claims 4, 7-9).

Watson raises several ineffective-assistance-of-trial-counsel (IATC) claims concerning counsel's performance at the guilt-innocence phase of his trial. In his fourth claim for relief, Watson argues counsel was ineffective for failing to file motions objecting to: (1) a visiting judge presiding over his trial; (2) his trial occurring at a time not authorized by law; and (3) the court's lack of jurisdiction over his case. In claims 7 through 9, Watson contends counsel was ineffective in failing to: (1) file a motion to suppress all evidence relating to the confidential informant; (2) object to the hearsay testimony of the confidential informant as violating the Confrontation Clause; and (3) object to the testimony of the State's forensic chemist, Jeffrey Keverline, under Texas Rule of Evidence 702. Watson also argues that the cumulative effect of all of the foregoing instances of ineffective assistance by his trial counsel prejudiced him. As discussed below, however, Watson fails to demonstrate the state court's rejection of the claims was contrary to, or an unreasonable application of, Supreme Court precedent. Federal habeas relief is therefore denied on each claim.

### 1.    The *Strickland* Standard of Review

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland,* a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court,

"[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694. Because this showing of prejudice must be "rather appreciable," a mere allegation of prejudice or the possibility of a different outcome is not sufficient to satisfy the prejudice prong of *Strickland*. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). As the Supreme Court explained: "[T]he question in conducting *Strickland*'s prejudice analysis is *not* whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel [had] acted differently." *Richter*, 562 U.S. at 111 (emphasis added) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009)). Rather, the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, this Court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Pinholster*, 563 U.S. at 190); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (same). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards, but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

### 2. The Trial Court's Jurisdiction

Watson's fourth claim for relief essentially faults counsel for not objecting to the trial court's alleged lack of jurisdiction over his case. According to Watson, the 274th District Court

of Guadalupe County (the convicting court), as well as the visiting judge who presided over his trial, lacked jurisdiction over his case because he was indicted in the 25th District Court and the case was never transferred. However, the Texas statute establishing the 274th District Court—Texas Government Code § 24.451—clearly states the court has "concurrent jurisdiction with the 25th and Second 25th district courts in Guadalupe County." Additionally, the statute provides a district judge of a county may "hear and determine any case or proceeding pending in another district court in the county without having the case transferred" or "sit for another district court in the county and hear and determine any case or proceeding pending in that court." Tex. Gov't Code § 24.003(b)(2) and (3). Thus, any objection by counsel on the grounds that the court or the judge lacked jurisdiction would have been frivolous.

Similarly, Watson's curious assertion that his trial took place at a time not authorized by law is meritless. Citing Texas Government Code § 24.126(c), Watson contends his February trial was unauthorized because the "terms" of the 25th District Court do not begin until the first Mondays in either March or October. But Watson is incorrect in believing that a trial can only take place when a district court's term commences. Even if he were correct, the statute governing the terms of Texas courts states that "the terms of each district . . . court are continuous." Tex. Gov't Code § 24.012(b). Either way, counsel cannot be considered deficient for failing to pursue such a futile or frivolous objection. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel cannot be deficient for failing to press a frivolous point); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that "counsel is not required to make futile motions or objections[]").

Because neither the trial court nor judge lacked jurisdiction to hear the case, any objection made by counsel on such grounds would have been futile. But "counsel is not required

to make futile motions or objections." *Koch*, 907 F.2d at 527. The Fifth Circuit has explained that "failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (where petitioner complained of trial counsel's failure to object to the admission of extraneous offenses even though unadjudicated extraneous offenses generally are admissible at penalty phase of capital murder trial); *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness). Because Watson has not demonstrated counsel's performance was deficient or that he was prejudiced in any way by counsel's failure to object, relief is denied.

      3.    Motion to Suppress

Watson next faults counsel for failing to file a motion to suppress all of the evidence connected with the confidential informant, Melvin Bruns, when it was revealed Bruns had been used "illegally" as a confidential informant. The testimony of Lieutenant Flores revealed that it was the policy of the sheriff's office not to use informants with outstanding warrants for probation violations without the permission of the court that placed them on violation. DE 10-9 at 74. Referring to this testimony, Watson correctly notes that, unbeknownst to the sheriff's office, Bruns was wanted on a probation-revocation warrant at the time he was used as a confidential warrant. However, Watson fails to provide any evidence or authority supporting his argument that Bruns's warrant made his use as a confidential informant "illegal" in the eyes of the law when it only violated a *policy* of the sheriff's office. Watson's claim is therefore conclusory. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (noting that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Regardless, Watson cannot demonstrate that he was prejudiced as a result of counsel's failure to file a motion to suppress on this basis. Watson seems to argue such a motion would have been successful because probable cause could not be established to initiate a drug transaction if Bruns's work as an informant was illegal. But again, Watson provides no legal support for the concept that probable cause was necessary for an informant to buy drugs from Watson. Even if it were, in denying counsel's motion to suppress Bruns's recording on different grounds, the trial court determined Bruns was "invited into the house" and was therefore "there by consent." DE10-8 at 37. Thus, there is no reasonable probability that the results of counsel's motion to dismiss would have been any different had counsel raised the instant objection. *Strickland*, 466 U.S. at 694. Relief is denied.

### 4. Confrontation Clause

Watson's eighth allegation challenges trial counsel's failure to raise a Confrontation Clause objection concerning alleged hearsay, testimonial statements Bruns made to Investigator Deslatte and Lieutenant Flores. Specifically, Watson contends counsel should have objected to the following testimony by the officers: (1) the case was initiated after receiving information from Bruns; (2) the operational plan to make a controlled purchase came from Bruns's information; (3) following the controlled buy, Bruns provided a statement to the officers about what transpired; (4) Bruns went inside Watson's house to purchase crack cocaine; and (5) a search warrant was obtained as a result of information obtained by Bruns. As discussed below, any objection by counsel on this basis would have been futile. *Sones*, 61 F.3d at 415 n.5 (counsel cannot be deficient for failing to press a frivolous point).

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him." U.S. Const. amend. VI. Under the Confrontation Clause, the admission of "testimonial statements" of a witness who did not appear at trial is barred unless the witness "was unavailable to testify, and the defendant had [] a prior opportunity for cross-examination." *United States v. Duron-Caldera*, 737 F.3d 988, 992 (5th Cir. 2013) (quoting *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004)). In *Crawford,* the Supreme Court defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." 541 U.S. at 51. Testimonial statements are not barred, however, if they are admitted for purposes other than establishing the truth of the matter asserted. *Id.* at 59 n.9.

In this case, Bruns was unavailable to testify and Watson did not have a prior opportunity for cross-examination. Accordingly, Watson's Confrontation Clause challenge turns on whether any of the above testimony constitutes a "testimonial statement" and, if it does, whether the testimony was offered for purposes of establishing the truth of the matter asserted. Watson fails on both accounts. To start, arguably none of the above testimony, aside from Lieutenant Flores's admission that Bruns provided a statement after the buy, even concern a statement by the confidential informant.[4] Indeed, testimony that Bruns went inside Watson's house to purchase crack cocaine was based solely on the officer's personal observations, not on anything allegedly stated by Bruns. Regardless, even assuming the testimony included testimonial statements from the confidential informant, the Court finds no Confrontation Clause issue because Bruns's statements were not offered for the truth of the matter asserted. *Crawford,* 541 U.S. at 59 n.9.; *see also United States v. Durhan*, 176 F.3d 478 (5th Cir. 1999) (unpublished) (finding the trial court did not err in admitting testimony regarding a confidential informant's statements when the statements were offered only to show why law enforcement officers took certain actions).

---

[4] Although he testified that Bruns provided a statement, the record reflects Lieutenant Flores never attempted to testify regarding the contents of this statement. DE 10-8 at 88.

Watson therefore fails to demonstrate counsel's performance was either deficient or that he was prejudiced in any way by counsel's failure to object, and relief is denied.

### 5.    Admission of Scientific Evidence

In his ninth allegation, Watson challenges trial counsel's failure to raise an objection under Texas Rule of Evidence 702 to the testimony of Jeffrey Keverline, the State's forensic chemist. Keverline testified that he works at the Texas Department of Public Safety Crime Lab examining evidence for the presence of controlled substances. DE 10-9 at 112-22. Keverline explained his specialized training has qualified him in the past as an expert in Texas courts, and testified about how he tests an unknown substance to determine its composition. In this case, Keverline conducted a full chemical analysis on the substance at issue and concluded the substance contained cocaine. Watson claims trial counsel should have objected on the grounds that the State failed to establish the reliability of Keverline's testimony. However, Watson fails to demonstrate that counsel's failure to object constituted ineffective assistance.

The current legal standard governing the admission of scientific expert testimony was set forth by the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). In *Daubert*, the Court held that before a party can present expert testimony based on "scientific knowledge," the proponent must demonstrate to the trial court that the proposed expert testimony is sufficiently reliable and relevant. 509 U.S. at 591, 595-99. In Texas, admission of scientific evidence is governed by Rule 702 of the Texas Rules of Evidence, which follows an evidentiary standard that is nearly identical to the one in *Daubert*.[5] *See Kelly v. State,* 824 S.W.2d 568 (Tex. Crim. App. 1992). Under Rule 702, the proponent of scientific evidence must show, by "clear and convincing" proof and outside the presence of the jury, that

---

[5]    Specifically, Rule 702 provides "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

the proffered evidence is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact issue. *Kelly*, 824 S.W.2d at 572–73.

In this case, there is no question Keverline's testimony was relevant, as it established the substance recovered from Bruns following the controlled buy from Watson was, in fact, cocaine. Watson wisely does not challenge its relevance; instead, he believes counsel should have challenged the reliability of Keverline's technique in analyzing the substance in question. To establish the reliability of evidence derived from scientific testing, three criteria must be satisfied: (1) the field of expertise involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon or utilizes the principles involved in that field. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (citation omitted). Watson provides no evidence or argument that Keverline—a recognized expert in the well-established field of chemical analysis—provided unreliable testimony. The Court therefore denies Watson relief, as he fails to demonstrate counsel's refusal to require a *Daubert/Kelly* hearing was either deficient or that he was prejudiced in any way by counsel's decision.

### 6. Cumulative Error

Finally, Watson argues the cumulative effect of his trial counsel's acts and omissions of deficient performance discussed above caused the performance of said counsel to fall below an objective level of reasonableness and prejudiced him within the meaning of *Strickland*. For the reasons discussed at length above, however, none of Petitioner's complaints about the performance of his trial counsel satisfy either prong of *Strickland* analysis. "[T]here is no precedent supporting the idea that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in *Strickland*." *United*

*States v. Thomas*, 724 F.3d 632, 648 (5th Cir. 2013). "Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006). Absent a showing of deficient performance by counsel, there is nothing to cumulate. *Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) ("Miller has not demonstrated error by trial counsel; thus, by definition, Miller has not demonstrated that cumulative error of counsel deprived him of a fair trial."). Watson's cumulative-error claim therefore does not warrant federal habeas corpus relief.

## D.     Appellate Counsel Claims (Claims 10, 11).

In his tenth and eleventh claims for relief, Watson alleges that his direct appeal attorney was ineffective because he failed to challenge: (1) the trial court's bias; (2) the sufficiency of the evidence; (3) the trial court's ruling on the motion to suppress; and (4) the trial court's refusal to rule on his motion for new trial. Similar to his IATC claims, these allegations concerning his appellate counsel were rejected by the state court during Watson's state habeas proceedings. Because Watson has not shown this rejection on the merits to be contrary to, or an unreasonable application of, the *Strickland* standard, federal habeas relief is denied. *Richter*, 562 U.S. at 101.

### 1.     The *Strickland* Standard Governs

The same two-pronged standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, the standard for evaluating the performance of counsel on appeal requires inquiry into (1) whether appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) whether there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *Robbins*,

528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015). Appellate counsel who files a merits brief need not, and should not, raise every non-frivolous claim. *Robbins*, 528 U.S. at 288; *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Only solid, meritorious arguments based on directly controlling precedent should be raised on direct appeal. *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003). Nonetheless, appellate counsel is obligated to research relevant facts and law or to make an informed decision that certain avenues will not prove fruitful. *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004); *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004). The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Barnes*, 463 U.S. at 751–52.

     2.    The Trial Court's Alleged Bias

Watson first asserts the trial court was not an impartial fact finder and that his appellate counsel should have raised a claim of trial court bias. The Due Process Clause guarantees the right to a fair trial, "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (quoting *Bracy v. Gramley*, 520 U.S. 899, 905 (1997)). Bias is not "lightly established," however, and "general allegations of bias or prejudice are insufficient to establish a constitutional violation." *Id.* (citations omitted). Although bias is not presumed, due process requires recusal if a judge is shown to have an actual bias. *Bracy*, 520 U.S. at 909. Similarly, recusal is required if there is an appearance of bias such that "the probability of actual bias . . . is too high to be constitutionally tolerable." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). The Supreme Court has only identified three conflict-of-interest type situations where a judge's failure to recuse constitutes this presumptive bias: (1) when the judge "has a direct

personal, substantial and pecuniary interest in the outcome of the case," (2) when he "has been the target of personal abuse or criticism from the party before him," and (3) when he "has the dual role of investigating and adjudicating disputes and complaints." *Id.* (quoting *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005)).

Watson fails to establish an actual bias on the part of the trial court, nor has he pointed to any evidence which would lead this Court to believe a presumptive bias existed under the three criteria listed above. Instead, Watson simply lists rulings by the trial court with which he disagreed and baldly asserts the court "abandoned" its neutrality. Disagreeing with a judge's rulings is not the same as establishing bias, however, and Watson points to no evidence of the trial court displaying "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). As a consequence, appellate counsel cannot be faulted for failing to raise what would amount to a frivolous allegation. *See Barnes*, 463 U.S. at 751-53 (holding appellate counsel is only constitutionally obligated to raise and brief those issues that are believed to have the best chance of success).

3.     Sufficiency of the Evidence

In his next allegation, Watson faults his appellate counsel for not raising a challenge to the sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979).[6] According to Watson, the State's circumstantial evidence failed to prove beyond a reasonable doubt that a drug transaction occurred between himself and the confidential informant. Again, to obtain

---

[6]     In *Jackson*, the Supreme Court enunciated the standard of review for challenges to the sufficiency of the evidence by state prisoners: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* In applying this standard, the Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

relief, Watson must demonstrate that his appellate counsel's performance was deficient and that such deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. He does neither.

To start, a petitioner must convince the court that the issues ignored were sufficiently meritorious such that counsel should have asserted them on appeal in order to establish deficient performance. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). But even assuming a *Jackson*-type challenge to the sufficiency of the evidence had some merit, counsel is not required to raise every non-frivolous ground that might be pressed on appeal. *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989). The Supreme Court has indicated a petitioner is able to satisfy this first prong of *Strickland* by showing that a particular non-frivolous issue neglected by counsel was "clearly stronger" than those issues actually presented. *See Robbins*, 528 U.S. at 288.

Although Watson faults his counsel for not challenging the evidence, the record demonstrates counsel did raise a claim that "there was insufficient evidence of corroboration and the trial court erred in failing to provide an instruction regarding such." *Watson v. State*, 421 S.W.3d at 187. Specifically, counsel argued the trial court should have applied Texas's accomplice-witness rule codified in Texas Code of Criminal Procedure Art. 38.141 requiring corroborating evidence where, as here, the State's case is based on accomplice-witness testimony. Such a claim generally involves setting aside informant-related evidence to allow a court to determine whether a jury instruction was needed under Art. 38.141 by reviewing the remaining evidence.[7] Watson has not demonstrated that the ignored point of error was clearly stronger in posture than the insufficient evidence claim counsel actually brought on direct appeal.

Regardless, Watson fails to establish he was prejudiced as a result of appellate counsel's failure to adequately challenge the sufficiency of the evidence on direct appeal. In the context of

---

[7]      In contrast, a claim under *Jackson* requires "all of the evidence" to be considered in determining an insufficient evidence claim. 443 U.S. at 319.

appellate counsel, a petitioner must demonstrate a reasonable probability that he would have prevailed on appeal in order to establish prejudice. *Robbins*, 528 U.S. at 285-86. Contrary to Watsons's assertions, however, the evidence was clearly sufficient to support his conviction. The jury heard testimony from both Investigator Deslatte and Lieutenant Flores about their arrangement with their confidential informant, Bruns, to buy narcotics from Watson. The officers made sure Bruns had no drugs on him the day of the buy, then gave him money and instructions to purchase drugs from Watson in his home. The officers placed a recording device on Bruns, surveilled him as he entered Watson's house and later exited, then followed him to a predetermined meeting point where they recovered the purchased narcotics. The entire transaction was recorded and played without sound for the jury. The jury then heard testimony from a forensic scientist that the substance recovered from Bruns was cocaine. In light of this evidence, there is no reasonable probability Watson would have prevailed on appeal had appellate counsel included a *Jackson*-type challenge to the sufficiency of the evidence. *Robbins*, 528 U.S. at 285-86.

### 4. Trial Court Rulings

In his final two allegations concerning appellate counsel, Watson argues counsel was ineffective for failing to challenge (1) the trial court's ruling on the motion to suppress the video exhibit, and (2) the trial court's refusal to rule on his motion for new trial. But other than making these bald assertions, Watson provides zero argument in support of his claims. Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross*, 694 F.2d at 1012 (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch*, 907 F.2d at 530 (same).

Watson's unsubstantiated and conclusory allegations concerning the trial court's ruling (or lack thereof) are wholly insufficient to prove that counsel acted deficiently. *See Barnard v. Collins*, 958 F.2d 634, 643 n.11 (5th Cir. 1992) (holding that "conclusory allegations" of ineffective assistance are without merit "[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial").

Furthermore, Watson's allegations are frivolous. With regard to the trial court's ruling on the motion to suppress the video, the record indicates counsel indeed challenged the admission of this evidence by arguing its admission violated the Confrontation Clause. *See* DE 10-2 at 40-54. And with regard to the motion for new trial, Texas law indicates such a motion would be overruled by operation of law if the trial court had not ruled on it within seventy-five days. *See* Tex. R. App. P. 21.8(a). Thus, raising such an allegation would be pointless, and appellate counsel is only constitutionally obligated to raise and brief those issues that are believed to have the best chance of success. *Barnes*, 463 U.S. at 751-53

Again, the burden of proving the instant claim lies solely on Watson. *Strickland*, 466 U.S. at 687. The question of whether appellate counsel was deficient for failing to raise these issues is inextricably linked to the merits of the issues allegedly neglected. Because it has been shown that the claims lacks merit, Watson cannot now show that appellate counsel was deficient. He is likewise precluded from demonstrating prejudice arising from the absence of the claim on direct appeal. Accordingly, Watson has not shown the state court's rejection of these claims was either contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *Richter*, 562 U.S. at 101. Federal habeas relief is therefore denied.

**E.** **Sufficiency of the Evidence Claim** (DE 18).

In his last allegation, Watson raises a challenge to the sufficiency of the evidence to support his conviction. Although Watson raised a similar challenge in the context of an IATC claim in his request for state habeas relief, this is the first time he has raised a stand-alone challenge to the sufficiency of the evidence. By failing to present the claim to the Court of Criminal Appeals for review either on direct appeal or his state habeas application, Watson has failed to exhaust state court remedies as required by 28 U.S.C. § 2254(b)(2) and has presented this Court with a new claim which the state court never had the opportunity to review.

Watson's new claim is also subject to denial by this Court as procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (finding the exhaustion requirement to be satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law."); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Procedural default occurs where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Norman v. Stephens*, 817 F.3d 226, 231 n.1 (5th Cir. 2016). In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

Watson failed to exhaust state court remedies with regard to the instant claim raised in his motion to amend. Should this Court require him to return to state court to satisfy the exhaustion requirement with the Texas Court of Criminal Appeals, however, that court would find the claims procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the

Texas Code of Criminal Procedure. The Fifth Circuit has consistently held that where a petitioner raises claims in federal court that have not previously been presented to the state courts, and Article 11.07 § 4 would apply to foreclose review of the claims if presented in a successive state habeas application, such is an adequate state procedural bar foreclosing federal habeas review of the claims. *See, e.g., Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred); *Jones v. Johnson*, 171 F.3d 270, 276-77 (5th Cir. 1999) (same). Thus, this claim is unexhausted and procedurally defaulted.

Consequently, Watson is precluded from federal habeas review unless he can show cause for the default and resulting prejudice, or demonstrate that the court's failure to consider his claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51; *Barrientes*, 221 F.3d at 758. Watson has made no attempt to demonstrate cause and prejudice for his failure to raise these claims in state court. Nor has he made any attempt to demonstrate that the Court's denial of the claim will result in a "fundamental miscarriage of justice." Thus, circuit precedent compels the denial of the claim as procedurally defaulted.

Regardless, after a thorough review of the record, this Court finds that relief would still be denied under *de novo* review. As discussed previously in Section D(3), *supra*, the evidence was clearly sufficient to support his conviction. As such, even if Watson were not procedurally barred from federal habeas relief on his new claim, relief would be denied on the merits of the claim.

## V. **Certificate of Appealability**

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El,* 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Watson was not entitled to federal habeas relief. As such, a COA will not issue.

## VI. **Conclusion and Order**

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Watson's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Petitioner's Motion for Expansion of the Record (DE 17) is **DENIED**;

2. Petitioner's Motion for Leave to Amend (DE 18) is **GRANTED**;

3. Petitioner's Motion for Evidentiary Hearing (DE 19) is **DENIED**;

4. Federal habeas corpus relief is **DENIED** and Petitioner Robert James Watson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (DE 1) is **DISMISSED WITH PREJUDICE**;

5. No Certificate of Appealability shall issue in this case; and

6. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the _____31_____ day of August, 2017.


_____
**ORLANDO L. GARCIA**
**Chief United States District Judge**